Mayer & Company *et al. vs.* Wood, March & Company *et al.*

---

S. MAYER & COMPANY *et al.*, plaintiffs in error, *vs.* WOOD, MARCH & COMPANY *et al.*, defendants in error.

When a debtor is in insolvent circumstances and makes an assignment to certain favored creditors, of goods to pay debts due them, and a bill is filed by other creditors alleging fraudulent combination and conspiracy between the preferred creditors and the debtor, and it is not alleged that the complainants claim title to the goods so assigned, or have any judgment or lien thereon, or that the parties to whom the assignment is made are insolvent, an injunction should not be granted, though the facts and circumstances may point to such fraudulent conduct as to induce the court to retain the bill, and investigate on the hearing the whole case, and decide and decree the equities arising thereon.

Debtor and creditor. Injunction. Before Judge WRIGHT. Dougherty County. At Chambers. January 6th, 1876.

Reported in the opinion.

WARREN & HOBBS; D. H. POPE, for plaintiffs in error.

R. N. ELY; J. ARMSTRONG; VASON & DAVIS, for defendants.

JACKSON, Judge.

J. W. Feagan, a merchant in Albany, failed. S. Mayer & Company, and Richard Hobbs, an attorney at law of the firm of Warren & Hobbs, representing certain other creditors, took an assignment of Feagan's goods to the amount of their respective claims. Hobbs had procured a policeman to watch Feagan, and had discovered that he was removing his goods in large quantities. Efforts were made by him to sue out an equitable attachment but failed. Finally, on the afternoon of the ... day of December, 1875, a bill of sale was taken by Hobbs to $2,500 00 worth of Feagan's goods, and by S. Mayer & Company to the amount of their claim, and another bill of sale to $500 00 worth of the goods was taken by Hobbs to Warren & Hobbs, to act as counsel for Feagan. In the night of that afternoon the parties met Feagan at his stores, there were two of his stores in Albany, and took an inventory and estimate of the value of the goods, and the same night, as fast as they were valued by the private sale marks of Feagan, and set apart, they were carried off to other stores. The keys of the stores of Feagan were delivered to Hobbs in the afternoon, when the bills of sale were drawn up and delivered. All the goods in Feagan's two stores were thus carried off to other stores at night, but all, according to the evidence of those present at the valuation, did not equal the amounts of the bills of sale. The bills of sale are not in the record, nor do they appear to have been in evidence; at least no copies of them appear of record here. Wood, March & Company, and many other creditors, file a bill alleging fraud on the above recited facts in Mayer & Company and Hobbs and his clients, and pray that they be enjoined from disposing of the goods until the facts can be ascertained and passed upon by a jury. They allege combination between Feagan and these defendants, and that the goods were worth $10,000 00, and that these defendants and

Feagan have got all for some $4,000 00; that these goods have been mixed with others; that they cannot well be reached at law, but equity alone can ferret out such fraudulent concealment and conduct. They further charge that an assignment was advised to be made by Pope, Feagan's first attorney, of all Feagan possessed, for the benefit of all the creditors, but it was defeated by Hobbs, who, by becoming employed by Feagan, got the assignment for his own clients and his own fees, and thus fraudulently injured the complainants. The bill was answered, and evidence *pro* and *con* taken by deposition. The chancellor granted the injunction; but subsequently, by agreement of the parties, modified it, allowing the defendants to sell and hold the proceeds, dissolving certain attachments and garnishments which had been sued out at law by the complainants, or some of them.

The question brought here is, whether there is such equity in this bill as will entitle complainants to an injunction. No proof of title of any sort to the goods in question in any complainant was before the chancellor, no creditor held any specific lien on any of the goods, nor was any complaining creditor a judgment creditor. It is true that it is alleged that Feagan was insolvent when he bought goods from complainants and never meant to pay for them, and got no title, but it is not stated that these bought by defendants are the goods so purchased from complainants. We see nothing, therefore, in this record to take this case out of the ruling of this court in *Cubbedge & Hazlehurst vs. Adams*, 42 *Georgia Reports*, 124; and the cases which have followed that case; and especially in the absence of any allegation of insolvency on the part of the principal defendants, who alone are served and received the goods, and against whom the injunction is granted, we think the court erred in granting the injunction. That is the sole question before us, and the only question which could be brought for our review at this early stage of the case. We do not then decide that there is no equity in this bill, but only that there is no such equity in it as will empower a chancellor to use the extraordinary remedy of injunction against these defendants. The

general aspect of the case does not look well for the defendants to the bill. The bills of sale are not produced, the goods were hurriedly valued at night, they were hurriedly removed at night, they seemed to have been taken to other stores with very unseemly and suspicious haste, the counsel for the creditors who are preferred becomes counsel for the insolvent debtor, a bill of sale is made to him of part of these goods to pay a retainer fee for this insolvent debtor, and thus the most vigilant enemy of the man who has smuggled off a large portion of the goods, and who undoubtedly has committed a great fraud on all the other creditors, is transferred, by virtue of a fee of part of the goods to himself and others to his clients, into his fast friend and legal adviser and defender. We say the outlook is not handsome; the affair may need a closer scrutiny, and as the proceedings at law seem, by the agreed order, to have been merged into this bill, we wish to be distinctly understood as only reversing the judgment of the court below in granting the injunction, and not as passing judgment at all upon the question of general equity which the facts may make.

Judgment reversed.