BOYD et al. v. LEMON & GALE CO. et al.

(Circuit Court of Appeals, Fifth Circuit. March 4, 1902.)

No. 1,025.

BANKRUPTCY—ACTS OF BANKRUPTCY—TRANSFER TO PREFER CREDITORS.

It is an act of bankruptcy for an insolvent debtor to sell all of his property to one not a creditor, and then to apply the proceeds to the full payment of a part of his creditors, leaving others unpaid; the transaction being a transfer of property with intent to prefer certain creditors, within the intent and meaning of Bankr. Act 1898, § 3, par. a, cl. 2.

Appeal from the District Court of the United States for the Northern District of Mississippi.

Boyd & Baker, the appellants, were adjudicated involuntary bankrupts by the United States district court for the Northern district of Mississippi, from which judgment they prosecute this appeal. The petition seeks to charge them with the first and second acts of bankruptcy, as laid down in paragraph a, § 3, Bankr. Act 1898. That part of the petition is in the following language: "The said Boyd & Baker committed an act of bankruptcy in that they did heretofore, to wit, on the 8th day of January, 1900, convey and transfer their entire property, consisting of a stock of goods, wares, and merchandise, with intent to hinder, delay, or defraud their creditors, or a part of them; and that they did on the 8th day of January, 1900, while insolvent, sell and convey their entire property, consisting of a stock of goods, wares, and merchandise, and applied the proceeds arising from said sale to the payment of their indebtedness to the Bank of Pontotoc and to the Bank of Tupelo, with intent to prefer said creditors over their other creditors, all of which was known to said Bank of Pontotoc and Bank of Tupelo." Boyd & Baker interposed a demurrer to "all that part of the petition in the following language, to wit: 'And that they did on the 8th day of January, 1900, while insolvent, sell and convey their entire property, consisting of a stock of goods, wares, and merchandise, and applied the proceeds arising from said sale to the payment of their indebtedness to the Bank of Pontotoc and to the Bank of Tupelo, with intent to prefer said creditors over their other creditors, all of which was known to said Bank of Pontotoc and Bank of Tupelo,'—(1) because it does not constitute an act of bankruptcy; (2) because the transfer of their property by said Boyd & Baker to a person not a creditor, and the payment of the proceeds to their creditors, is not an act of bankruptcy; (3) because under the law the payment in money by a debtor of one or more creditors, to the exclusion of others, is not an act of bankruptcy." This demurrer was overruled by the court, and leave given Boyd & Baker to answer the petition filed against them to have them declared involuntary bankrupts, and thereupon they filed their answer denying the material allegations of the petition. There was then a trial of the issues raised by the petition and answer, on an agreed

state of facts between the petitioning creditors and Boyd & Baker. The court adjudicated them bankrupts. The agreed facts are recited in the judgment of the court in the following language, to wit: "That on the 8th day of January, 1900, said Boyd & Baker, a firm of merchants composed of E. R. Boyd and W. E. Baker, doing business in Pontotoc, Miss., sold their entire stock of goods, wares, and merchandise for cash to Knox Bros., and took the proceeds of such sale, and applied a sufficiency of the same to the debts due by them to the Bank of Tupelo and the Bank of Pontotoc and Clark, Hood & Co., and left petitioners unpaid, not having paid them anything; that at the time of filing the petition in this cause, and at the time of said sale, and now, they were and are insolvent." Appellants' assignment of errors is as follows: "First. The court erred in overruling appellants' demurrer to appellees' petition to have appellants declared involuntary bankrupts. Second. The court erred in adjudging appellants involuntary bankrupts, because the sale by them of their goods, wares, and merchandise, while insolvent, to a party not a creditor, for cash, and the application of a part of such proceeds of sale to the payment of a part of their creditors, and leaving others unpaid, was not, under the law, an act of bankruptcy."

W. D. Anderson, for appellants.

J. D. Fontaine, for appellees.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

PARDEE, Circuit Judge, after stating the facts as above, delivered the opinion of the court.

The same question was raised by the demurrer as is involved on the merits, and it is this: Whether it is an act of bankruptcy, under the bankruptcy act of 1898, for an insolvent debtor to sell all of his property to one not a debtor, for cash, and then apply the proceeds to the full payment of part of his creditors to the exclusion of others. Counsel for appellants contends that it is not an act of bankruptcy for an insolvent debtor to sell all of his property for cash, nor is it an act of bankruptcy for an insolvent debtor to fully pay off some of his creditors in money, and leave the balance of his creditors unpaid; and he apparently concedes that under the present bankruptcy law it is an act of bankruptcy for an insolvent debtor to transfer his property to some of his creditors in full payment, and leave others unpaid, but he denies that money is property, within the meaning of the bankrupt law. He argues very plausibly upon his separate propositions, supporting the same by authorities, but he does not answer the proposition that the sale of property for money, and then the payment of the money to creditors, produces the same result as if the property is transferred directly to the creditors; and we do not think that the insolvents in this case, in taking two steps to avoid the effect of the bankrupt act, advanced any further, or secured any other result, than if they had taken the one full step.

But it is not necessary to elaborate our views in this direction; for we are clear that as the agreed statement of facts shows that Boyd & Baker, while insolvent, took the money proceeds of the sale of all their property, and applied the same to the full payment of the debts due by them to several of their creditors, leaving others unpaid, it is sufficiently proved that they thereby made a transfer of their property while insolvent to one or more of their creditors with intent to prefer such creditors over their other creditors, within the intent and meaning of Bankr. Law, § 3, par. a, cl. 2.

There can be no doubt the insolvents transferred money to some of their creditors with intent to prefer them, and money is property, as the term "property" is used in defining the word "transfer," in clause 25, § 1, Bankr. Act. And this has been distinctly held by the supreme court in Pirie v. Trust Co., 182 U. S. 438, 443, 21 Sup. Ct. 906, 45 L. Ed. 1171, in which case the court say:

"It will be observed that payments in money are not expressly mentioned. Transfers of property are, and one of the contentions of appellants is that by 'transfers of property' payments in money are not intended. The contention is easily disposed of. It is answered by the definitions contained in section 1. It is there provided that 'transfer' shall include the sale and every other and different mode of disposing of or parting with property or the possession of property, absolute or conditional, as a payment, pledge, mortgage, gift, or security.' It seems necessarily to mean that a transfer of property includes the giving or conveying anything of value,—anything which has debt-paying or debt-securing power. We are not unaware that a distinction between money and other property is sometimes made, but it would be anomalous in the extreme that in a statute which is concerned with the obligations of debtors and the prevention of preferences to creditors the readiest and most potent instrumentality to give a preference should have been omitted. Money is certainly property, whether we regard any of its forms or any of its theories. It may be composed of a precious metal, and hence valuable of itself, gaining little or no addition of value from the attributes which give it its ready exchangeability and currency. And its other forms are immediately convertible into the same precious metal, and even without such conversion have at times even greater commercial efficacy than it. It would be very strange, indeed, if such forms of property, with all their sanctions and powers, should be excluded from the statute, and the representatives of private debts which we denominate by the general term 'securities' should be included. We certainly cannot so declare upon one meaning of the word 'transfer.' If the word itself permitted such declaration,—which we do not admit,—the definition in the statute forbids it. 'Transfer' is defined to be not only the sale of property, but 'every other mode of disposing or parting with property.' All technicalities and narrowness of meaning is precluded. The word is used in its most comprehensive sense, and is intended to include every means and manner by which property can pass from the ownership and possession of another, and by which the result forbidden by the statute may be accomplished,—a preference enabling a creditor 'to obtain a greater percentage of his debt than any other creditors of the same class.' But it is said 'that congress in passing the law had in mind the distinction between the payments of money and the transferring of property, otherwise they indulged in tautology,' in subdivision d, § 60. By this it is provided: 'If a debtor shall, directly or indirectly, in contemplation of the filing of a petition by or against him, pay money or transfer property to an attorney and counselor at law, solicitor in equity, or proctor in admiralty, for services to be rendered, the transaction shall be re-examined by the court on petition of the trustee or any creditor, and shall only be held valid to the extent of a reasonable amount to be determined by the court, and the excess may be recovered by the trustee for the benefit of the estate.' That all the words of a statute should, if possible, be given effect we concede, but tautology sometimes occurs. Is there not an example in subdivision 'e' of section 67 (which, by the way, and notwithstanding, is relied on by the appellants)? It provides that 'all conveyances, transfers, assignments, or incumbrances of his property, or any part thereof, made or given by a person adjudged a bankrupt,' in fraud of creditors, shall be null and void as to them. Manifest tautology, but certainly not used to detract from the definition of 'transfer' in section 1, or to exclude application of that section in proper cases. Conveyances, assignments, and incumbrances of property are but modes of its absolute or conditional disposition (transfer), as payment of money is a mode of its disposition (transfer), and there was a particular expression of each mode on account of the primary purpose to be secured in

each case,—the purpose being in 60d to control payments to attorneys; in 67e the purpose being to prohibit the disposition of property by the debtor to persons other than creditors in fraud of the act."

And so we hold that when the insolvents in this case paid some of their creditors in full they committed an act of bankruptcy.

The judgment of the district court is affirmed.