McKENZIE *et al. v.* THOMAS, trustee.

1. The petition was not demurrable for want of equity.
2. In an action to set aside as fraudulent an assignment or transfer of property alleged to have been made by an insolvent debtor in trust or for the benefit of one of his creditors, where a benefit was reserved to the debtor, the petition need not allege that the assignee or transferee had notice of the debtor's insolvency at the time of the transfer.
3. The fact that in the sale of all of his property by an insolvent debtor the purchaser agrees to employ him at a stipulated salary as manager of the business in which the property is to be used will not, per se, render the sale void.  If the sale be bona fide and for full value over the agreement for employment, the transaction is valid.
4. As the plaintiff claimed no rights or benefits under the agreement set out in the petition, but assailed the same as fraudulent and void, and sought to have it set aside, it was not necessary for the petition to allege that the debtor had complied with the terms of such agreement, or that the plaintiff, his trustee in bankruptcy, was ready to do so.
5. The conveyance by the debtor to the defendant company, especially in view of the terms of the agreement alleged to have been made in connection therewith, put the title to the property in the grantee, either as a corporation or as a partnership ; and if it was not void for other reasons alleged, it could not be successfully attacked by the plaintiff merely because of some irregularity or defect in the organization of the company.
6. As it did not appear that any of the creditors, represented by the plaintiff as trustee in bankruptcy of one of the defendants, held judgments or other liens, or had any claim to the property upon which the injunction operated, by reason of fraud in the creation of their demands or otherwise ; and as there was no sufficient allegation and no proof of the defendant's insolvency, the granting of the interlocutory injunction was erroneous.

Argued July 18, — Decided October 30, 1903.

Injunction.    Before Judge Gary.  . Richmond superior court. March 16, 1903.

The petition of Floyd W. Thomas, trustee in bankruptcy of George B. Parker, against George B. Parker, John H. McKenzie, and Charles F. McKenzie, individually and as partners, as J. H. McKenzie & Son, Hollis C. Boardman, Margaret T. Gray, the Commerical Bank of Augusta, and the McKenzie Brick Company, alleged :    On May 31, 1900, said Parker conveyed to Margaret T. Gray 161 acres of land (described) to secure a loan of $3,000, and on November 5, 1900, he conveyed the same land (subject to the former conveyance) to the Commercial Bank to secure a debt of $5,775.   On January 4, 1901, said Parker, John H. McKenzie, Charles F. McKenzie, and Hollis C. Boardman entered into an

agreement (a copy of which was set out), to the effect that they would, as promptly as practicable, become incorporated under the name of the McKenzie Brick Company, with capital stock to the amount of $25,000, of which the two McKenzies were to subscribe at the outset $2,000, Boardman $2,000, and Parker $2,000; and $200 was to be put immediately into a common fund, to be held for the use of the corporation as soon as it should be incorporated, and the remainder to be paid in cash on or before March 1, 1901; that if any of the parties should fail to comply with the agreement, the cash so paid should be forfeited to the other party or parties in compensation for the trouble undergone; that Parker was to sell the land before referred to, together with the horses, mules, farming utensils, and personal property thereon, to the said Brick Company for $5,500, payment for the land to be made by Brick Company by paying Parker's debt of $5,500 to the Commercial Bank, Parker agreeing to appropriate his entire profits, exclusive of his salary from the Brick Company, to the payment of his debt to Mrs. Gray, and agreeing that in any event he would pay that debt in five years from date; that Parker was to be employed as manager of the company at a salary of $80 per month, "so long as [he] complies with the terms of this agreement, and so long as the plant is actively at work and profitable;" that to secure his obligation to pay Mrs. Gray, he was to transfer to the company the $2,000 of stock he was to purchase therein; that Charles F. McKenzie was to be secretary and treasurer; and that "All rights and obligations herein created and entered into are for the benefit of said brick company, though they may be all enforced in the names of the parties hereto, should said company not be incorporated." Parker was insolvent at the time of this agreement, and was indebted to the parties mentioned in the bankruptcy proceedings, and continued insolvent down to the adjudication in bankruptcy. In pursuance of the agreement the parties thereto applied to the court for incorporation, and the charter applied for was granted on February 5, 1901; but the incorporators never legally organized under the charter, and never became a corporation de jure. The petition for incorporation stated that the capital stock was $25,000, actually paid in; but this amount was never paid in, nor in good faith subscribed for; the only part subscribed for, prior to February 8, 1901, was $6,000, of which the McKenzies paid $2,000, Boardman $2,-

000, and Parker $75; ten per cent. of the capital was not paid in on February 8, 1901, on which date Parker, in pursuance of said agreement, transferred said property and his bond for title from Mrs. Gray (all his visible assets) to said company for the consideration, as expressed in the deed, of $5,500; but this was not the real consideration, and no part of this sum was paid to Parker. The real consideration, if there was any, was the carrying out of said agreement, whereby the company should pay the debt of Parker to the Commercial Bank of $5,500, and Parker was to manufacture the land into brick, as general manager, at a salary of $80 a month, and retained an undivided third interest in the property, and was to receive a third of the profits of the business. If this was not the consideration, the deed was voluntary. On the day on which this conveyance to the company was made, the said parties, acting in the name of the company, made a note to the Commercial Bank for $5,500, in lieu of that of Parker held by the bank, and then undertook to convey the land to the bank as security for the new note. The note and deed, as the act of a corporate entity, were void. By said action Parker attempted to convey his property beyond the reach of his other creditors, to hinder and delay them in the collection of their debts, which intent was known to his grantee, if any he legally had; and said bank, a creditor of said Parker, was thus attempted to be preferred; all being done while he was insolvent, and in contravention of the bankrupt law, and within four months before the filing of the petition in bankruptcy against him (May 23, 1901). The brick company has never paid the debt to the bank, but is renewing it from time to time, and said promoters or corporators are severally liable for its payment. Said company never acquired any title, legal or equitable, by virtue of said deed to it, and was in law incapable of acquiring the same, nor did it convey any rights to the bank, under said conveyance of February 8, 1901. After the making of the contract for incorporation, and the deed to the company, Parker continued in possession of the property. Under that contract and the transfer of February 8, 1901, a trust or benefit was reserved in said property for the use of Parker, to wit: a benefit or interest as a subscriber to the stock of the contemplated company; a benefit or interest to the extent that he paid for said stock; a benefit of indefinite employment as its general manager at a salary of

eighty dollars a month; and a benefit in an undivided third of the profits of the corporation, out of which it was agreed Mrs. Gray was to be paid. The consideration of $5,500 named in said transfer was much less than the value of the property, and said agreement for incorporation represented a part of the consideration to be received by Parker. Said promoters and the so-called corporation knew of said trust and benefit reserved by Parker. The title of said company is void as against the creditors of Parker, and as against plaintiff, their representative, the same being founded on a transfer by Parker, an insolvent debtor, to a contemplated corporation to be formed by himself and others, to be operated preferentially and beneficially, for the use of himself and a favored creditor, whom he desired paid, Parker at the same time, under said agreement, with the consent of said McKenzie and Boardman, reserving an interest and benefit for himself. Said company, whether a corporate embryo or voluntary association, is charged with the knowledge of its members as aforesaid, under said contract. The conveyances of Parker to Mrs. Gray and the bank, of May and November, 1900, carried, so far as plaintiff is informed, the title to said property to secure the sums loaned, leaving in Parker an equitable interest — the right to redeem on payment of the indebtedness, which right passed to plaintiff, by operation of law, for administration in bankruptcy; but plaintiff does not know whether these conveyances are still valid, and he reserves the right to contend that they are no longer prior to his claim, when he is fully apprised of the facts. Said company is not, as against plaintiff, a legal corporation, but is simply the name under which its promoters are doing business; but whether a corporation or not, they have no legal or equitable right to have, control, or use said property, and are in equity and good conscience bound to account to plaintiff therefor and for the profits made therefrom. Said company and its agents, including Parker, are engaged in the business of making brick, and in so doing are using up and removing a part of the freehold and selling it and converting the proceeds to their own use. By said arrangement Parker contracted for indefinite employment, and has by said transfers placed the property beyond the reach of the ordinary process of law. Said property, both real and personal, is the property of Parker, and is now the right and property of plaintiff as his trustee in bankruptcy, subject only, in

equity, to the prior claims of Mrs. Gray and the Commercial Bank, if any. The conveyance by Parker to said company and its claim to be the owner of said property, under the contract, conveyance, and organization aforesaid, are clouds on the title of plaintiff, and must be removed before plaintiff can fully realize on Parker's interest therein. Said promoters, claiming to be a corporation, are holding themselves out as the owners of said property, doing business thereon, and that without any legal right or title thereto. Whether said so-called corporation or association of promoters is able to pay its debts is unknown to plaintiff; but plaintiff, upon information and belief, charges that on an investigation of its affairs it will be found to be insolvent. Said parties have permitted said land (which in their statement of the affairs of said company to the commercial agencies they value at $16,000) to be returned for taxation for 1901 at $1,500. The brick made therefrom and the profits realized from those sold are in equity the property of plaintiff as trustee in bankruptcy of said Parker. Said brick and sales aggregate the value of $20,000, or other large sum, and said sum went into the hands of said McKenzies, Boardman, and Parker. The action of said McKenzies, Boardman, and Parker, in attempting to exercise corporate powers under said charter before said $25,000 was bona fide subscribed in writing, has rendered them liable to the creditors of the so-called corporation, to the extent at least of $25,000. Plaintiff has in equity the rights of a creditor, so far as to require said parties to account for all of said property conveyed, the property taken from the freehold, the brick and the sales made thereof. This right is superior to any debt of said corporation in embryo or association of promoters. Their continuance in business complicates the situation surrounding the property. Plaintiff and the estate he represents are financially unable to tender to Mrs. Gray and the bank the amount of their claims, even if it were necessary. Mrs. Gray and the bank have not proved their claims in the bankrupt court, and have not sought to have their security valued. Said McKenzies and Boardman claim that Parker has no rights in said property, and that none passed to plaintiff as his trustee in bankruptcy. In view of these adverse claims, plaintiff's right to redeem, or in equity cause a sale of said property free from the claims of Mrs. Gray — such claims, if any, to attach to the proceeds of the sale, — is valueless, and can

not be sold or administered on at its true value, until the conveyances of February 8, 1901, made by Parker and his associates, are canceled, and the debts, if any, to Mrs. Gray and the bank are fixed and defined. Plaintiff prays, that a receiver for the property be appointed; that the defendants be enjoined from using it or claiming title to it; that the conveyances of Parker to said company and from the company to the bank be canceled; that the defendants be required to interplead; that the court decree a sale of the property, free from the claims of all parties, and distribute the proceeds and pay over to plaintiff, for administration in the bankrupt court, that part of the proceeds to which he is entitled as trustee; for an accounting as to the profits made from the property; and for general relief.

The defendants, except Parker, Margaret T. Gray and the Commercial Bank, filed a demurrer, and answered denying the allegations as to insolvency, and other material allegations. The demurrer was on the following grounds: No cause of action is set out. There is no right to the equitable remedy asked for. The petition fails to allege that Parker complied with the terms of the contract therein referred to. The petitioner does not show wherein he has a right to attack collaterally the existence of the corporation. He is privy with Parker, and as such is estopped, under the allegations of the petition, from denying the corporate existence of said company. The petitioner does not offer to carry out the contract and perform the duties assumed by Parker. There is no allegation that Parker paid for stock in the corporation, and therefore such stock is not assets of which the trustee in bankruptcy can take charge. There is no allegation that the defendants are insolvent. There is no allegation that the defendants, or any of them, knew of the alleged insolvency of Parker when the contract referred to in the petition was entered into between them and Parker. There is no allegation to show why any payment made by Parker has not been forfeited by reason of his non-compliance with his obligations under the contract. There is nothing to show that the petitioner is entitled to any profits from the company, as it is not shown that the stock subscribed for by Parker was paid for. There is nothing in the petition to show that Parker did not lose his employment under the terms of the contract. The petitioner does not show that he represents any of the creditors of the so-

called corporation, and therefore he has no rights by reason of the alleged liability of the defendants to its creditors. The petition fails to show that the alleged equity of redemption of Parker is of any value. It fails to show that the defendants had notice or knowledge that in any way made them parties to the alleged effort on the part of Parker to give a preference to one or more of his creditors. The petition is multifarious. There is a misjoinder of parties.

The court overruled the demurrer and granted an injunction restraining the defendants from disposing of or encumbering the property in question.

*William H. Barrett,* for plaintiffs in error
*William K. Miller,* contra.

FISH, P. J.     1. The petition was not subject to general demurrer. It alleged, in effect, that Parker, while insolvent, conveyed to the McKenzie Brick Company the property in question, which covered all his visible assets, under an agreement with the company that he should reserve an undivided one-third interest in the property; that he should be employed at a stipulated salary as manager of the business in which the property was to be used, and receive one third of the profits therefrom; that he should discharge his debt to Mrs. Gray, secured by the first deed he had given to the property; that the company should pay his debt to the Commercial Bank of Augusta, secured by the second deed; and that this consideration to be paid by the company for the land was much less than its value. If this transaction amounted to an assignment or transfer within the meaning of the first paragraph of section 2695 of the Civil Code, which declares fraudulent and void, against creditors and others, " every assignment or transfer by a debtor, insolvent at the time, of real or personal property, or choses in action of any description, to any person, either in trust or for the benefit of, or in behalf of, creditors, where any trust or benefit is reserved to the assignor or any person for him," then the petition was not subject to general demurrer. Moreover the petition was saved from a general demurrer by the following allegation: " That by said action said Parker attempted to convey his property beyond the reach of his other creditors, to hinder and delay them in the collection of their debts, which intent was known to his gran-

tee, if any he legally had; and said bank, a creditor of said Parker, was thus attempted to be preferred; all being done while he was insolvent, and in contravention of the bankrupt law, and within four months before the filing of said petition in bankruptcy against him, said Parker." Bankruptcy Act, 1898, ch. 111, sec. 2; Boyd v. Lemon, 114 Fed. 647.

2. If the conveyance made by Parker to the McKenzie Brick Company be treated as an assignment or transfer under the Civil Code, § 2695, par. 1, because made by him, while insolvent, for the purpose of preferring the Commercial Bank of Augusta, one of his creditors, he reserving a benefit to himself, it was not necessary that the petition should allege that the Brick Company knew of Parker's insolvency at the time the conveyance was executed. If Parker was insolvent at that time, and such assignment or transfer gave a benefit or preference to the bank, and he reserved a benefit to himself, the conveyance was void as to his other creditors, and, being void, could be set aside at their instance or at the instance of Parker's trustee in bankruptcy, who represented them, notwithstanding the fact that the McKenzie Brick Company may not have known of Parker's insolvency at the time. The statute (Civil Code, § 2695), above quoted, does not say that such assignments and transfers as therein mentioned, when made by an insolvent debtor, shall be fraudulent and void provided the assignee or transferee shall know of the debtor's insolvency at the time of the assignment or transfer, but it broadly declares that every such assignment or transfer made by an insolvent debtor shall be fraudulent in law against creditors and others, and as to them null and void. In *Coleman & Burden Co.* v. *Rice*, 115 *Ga.* 510 (2), it was held without qualification that "An assignment or transfer by a debtor, insolvent at the time, of any kind or character of property, when any trust or benefit is reserved to the assignor, is fraudulent and void." See *Mitchell* v. *Stetson*, 64 *Ga.* 442; *Park* v. *Battey*, 80 *Ga.* 353. In none of these cases was any reference made to knowledge by the assignee or transferee of the insolvency of the debtor, though in all of them an assignment or transfer by an insolvent debtor was assailed as fraudulent under the code section referred to above. The absence of any reference, in paragraph 1 of the section, to notice or knowledge of the debtor's insolvency on the part of the assignee or transferee is quite significant, in view

of the provisions of paragraph 2, that a conveyance made by a debtor with intention to delay or defraud his creditors shall be void when such intention is known to the party taking.

While a bona fide conveyance made by an insolvent debtor for a fair and valuable consideration, and free from any trust, is valid, an assignment or transfer by such a debtor, either in trust, or for the benefit of, or in behalf of, a creditor, when any trust or benefit is reserved to the assignor or any person for him, is fraudulent and void as against other creditors, though the assignee or transferee may have no notice of the debtor's insolvency.

3. The proposition in the third headnote was announced in *Cribb* v. *Bagley*, 83 *Ga* 105, and requires no elaboration.

4. The plaintiff claimed no rights or benefits under the agreement alleged to have been made between Parker and the McKenzie Brick Company, but assailed the same as fraudulent and void against Parker's creditors, whom the plaintiff, as his trustee in bankruptcy, represented, and for that reason sought to have it set aside. It was therefore not necessary that the petition should allege that Parker had complied with the terms of that agreement, or that the plaintiff was ready to do so.

5. We do not deem it necessary to decide whether the McKenzie Brick Company was legally organized and was capable of acquiring title to the property in question, or whether the plaintiff could collaterally attack the validity of its corporate existence. The deed from Parker to the company was good as against him, and put the title in the company, either as a corporation or as a partnership composed of its incorporators. Especially is this so in view of the terms of the agreement made in connection therewith, viz.: "All rights and obligations herein created and entered into are for the benefit of said brick company, though they may be all enforced in the names of the parties hereto, should said company not be incorporated." Therefore, if the deed were not void for other reasons alleged in the petition, it could not be successfully assailed and the property subjected to the payment of the debts of Parker's creditors, merely because of some irregularity or defect in the organization of the company.

6. While the petition was sufficient to withstand the demurrers filed thereto, and his honor was right in holding it in court that the whole case might be passed on by a jury, we think he erred

in granting an interlocutory injunction.　The petition alleged: "That whether said so-called corporation or association of promoters is able to pay its debts is unknown to petitioner; but petitioner, upon information and belief, charges that upon an investigation of its affairs it will be found to be insolvent." Where insolvency of a defendant is necessary to the equitable relief prayed, it should be expressly charged, and an allegation of insolvency upon information and belief is not sufficient. *McLendon* v. *Hooks*, 15 *Ga.* 533.　The answer expressly denied that the McKenzie Brick Company, or either of the McKenzies, or Boardman, was insolvent, and averred that each of them was amply able to pay the entire indebtedness of Parker, and that this was known, or might readily have been known, to the plaintiff when the petition was filed.　There was no evidence of the defendant's insolvency submitted on the hearing.　So far as appears from the record, none of the creditors represented by the plaintiff as trustee in bankruptcy held a judgment or other lien, or had any claim to the property affected by the injunction, by reason of fraud in the creation of his demand or otherwise.　The case, therefore, is controlled by the rulings in *Mayer* v. *Wood*, 56 *Ga.* 427; *Stillwell* v. *Savannah Grocery Co.*, 88 *Ga.* 100; *Turnipseed* v. *Kentucky Wagon Co.*, 97 *Ga.* 259; *Guilmartin* v. *R. Co.*, 101 *Ga.* 569.

*Judgment reversed.　All the Justices concur, except Lamar, J., disqualified. and Turner, J., who did not preside.*