## TANNER GROCERY CO. *et al. v.* STEWART *et al.*

This case came before this court upon a writ of error from the superior court of Heard county; and the same being for a decision by a full bench of six Justices, who are evenly divided in opinion, Russell, C. J., Hill and Gilbert, JJ., favoring an affirmance, and Beck, P. J., Atkinson and Hines, JJ., favoring a reversal, the judgment of the court below stands affirmed by operation of law.

*Syllabus by Russell, C. J.*

1. In hearings upon applications for injunction and receiver where the evidence upon material issues of fact is in conflict, the grant or refusal of the application is within the discretion of the chancellor, and his judgment in the exercise of his discretion in granting or refusing or modifying the relief prayed for will not be controlled unless manifestly abused. There was no abuse of discretion in the present case.

2. A party who, in an equitable proceeding (and in order to prevent the appointment of a receiver), asks the custody of the personal property involved in the issue, pending the litigation, and concurrently offers "to give a bond . . to answer to any judgment that may be made in this case, or any judgment the jury may find or to the court's award in this case," cannot complain that the bond required by the court substantially conforms to his offer. By tendering a bond conditioned as above quoted, the party waives any right to insist that his liability upon the bond should be confined and limited to the value of the property in litigation.

3. The assignment of error as to the failure of the judge to remove the temporary receiver cannot be considered, because no such point was presented in the lower court.

No. 3637. JANUARY 28, 1924.

Receivership, etc. Before Judge Searcy. Heard superior court. February 10, 1923.

*Boykin & Boykin,* for plaintiffs in error.

*Hall & Jones, Leon Hood,* and *Smith & Millican,* contra.

C. H. Stewart and the City Supply Company presented an equitable petition in Heard superior court against A. E. Caswell, to subject his claim for a homestead made and allowed by the bankrupt court to the payment of certain promissory notes containing the usual waiver of homestead. The judge appointed a temporary receiver as prayed, and issued a restraining order against A. E. Caswell, with a rule nisi requiring him to show cause on January 27, 1923, why the restraining order should not be continued and be made permanent, so as to restrain him from selling and disposing, or taking charge of and receiving from his receiver, Willis Smith, or trustee in bankruptcy, the homestead exemption which he had claimed in his bankruptcy petition. At a

later date the petitioners amended their petition and set up that the claim for homestead as filed by Caswell was not made in good faith for the benefit of his family, but was a fraudulent claim, as it was then his purpose to transfer the same, and that he did, simultaneously with the filing of said claim and the receiver's taking charge of his assets, to wit, on December 16, 1922, transfer and assign the same to C. M. Tanner Grocery Co. and Dougherty-Little-Redwine Co.; and petitioners allege that at the time said transfer and assignment was made there was a distinct agreement that the Tanner company and the Redwine company would buy in said bankrupt's stock of goods and turn the same over to said bankrupt and he could go forward and liquidate their indebtedness and have the remainder of said stock of merchandise clear, thereby reserving to Caswell, the assignor, a benefit to himself, and the surplus reserved to him. Unless a court of equity interferes, the trustee, Willis Smith, will surrender to the assignees said homestead property under the pretended fraudulent transfer. The petitioners pray that the assignees be restrained from receiving the homestead property or funds, and that the trustee of the bankrupt be restrained from paying over said funds or delivering said property; and for a rule nisi directed to the Tanner company and the Redwine company, requiring them to intervene and set up their rights, if any, to the funds.

The court granted a rule nisi as prayed; and the case having been continued until February 10, 1923, the defendant Caswell appeared and filed demurrer and plea to the petition, and the intervenors, the Tanner company and the Redwine company, filed a plea to the jurisdiction and a demurrer to the petition and amendment as well as an answer. The defendant in his answer denied that he was indebted to the petitioners on the notes sued on, by reason of the fact that he had been adjudicated a bankrupt and the debt was one provable and dischargeable in bankruptcy. He denied that the assignment of his homestead was fraudulent, and set up that the creditors to whom the exemption was transferred had made no arrangement with him whereby any interest was reserved to him. The intervenors in their answer denied that the transfer and assignment was void, and alleged that no interest was reserved to the bankrupt, and that the same is valid; and prayed that the court so adjudge, and order that the said money be turned over

to them by the trustee, Willis Smith, and that the restraining order be dissolved. Respondents further show that they are solvent, and in the event the court should think that this matter should be determined by a jury, and as Heard county has only two terms of court a year, they are willing to give a bond approved by the clerk of said court, "to answer to any judgment that may be made in this case or any judgment that the jury may find or to the court's award in this case upon the final determination of the same."

It was agreed by all parties that A. E. Caswell was duly adjudicated a bankrupt on November 15, 1922, and that Willis Smith was the duly appointed receiver, and was later elected trustee of A. E. Caswell. The evidence was in sharp conflict as to whether any interest was reserved by the bankrupt for himself. The plaintiffs introduced the affidavit of Leon Hood, in which he deposed that on December 16, 1922, he went with Willis Smith, who had been appointed as receiver of the bankrupt, to the place of business of the bankrupt; that he had a conversation with the bankrupt and tried to get him to transfer his exemption to his brother, A. C. Caswell, to protect him on some security debts he was bound for; that the bankrupt told him that he would not transfer his exemption to any one that would not protect him and put him back in business. A few minutes after the above conversation C. M. Tanner and N. N. Johnson, members of the firm of C. M. Tanner Grocery Company, drove up to the home of the bankrupt, and the parties then went to the storehouse of the bankrupt. There he had another conversation with Caswell, and he again told affiant that he would not transfer his exemption to his brother, because he would not take care of him. Affiant then heard a conversation between Tanner and the bankrupt, and Tanner advised the bankrupt, if he would transfer his exemption to them, that they would buy in his stock of goods at about the amount of the exemption and that they would not be out any money and they would turn it back to him, and that he could go ahead and pay them in a few months and have the stock of goods and not owe any one anything. They had quite a conversation along this line, and finally the suggestion was made to insert Dougherty-Little-Redwine Company's name in the transfer, with the understanding that they would agree to the above arrangement. Affiant left the store for about one

minute, and Tanner and Caswell went to the back to the desk, and when he returned Tanner hurried out and left in his car. The assignment of the exemption was carried to the storehouse of the bankrupt by Tanner when he went there. Afterwards Caswell told affiant that he did not know whether the assignment was going through or not, for the reason that he did not know whether or not Dougherty-Little-Redwine Company would agree to the terms of the assignment of his exemption. Affiant says that the property was sold and bought in by the Tanner company and the Redwine company, and that immediately after the sale Caswell, in accordance with the agreement made with C. M. Tanner on December 16, 1922, took possession of the stock of goods and now has possession of the same.

The defendant offered his affidavit in which he deposed that when Hood came to his place of business on December 16, 1922, Hood tried to make him transfer his exemption to C. H. Stewart and the City Supply Company, who had already sued him upon the notes as set out in this case. While he was there C. M. Tanner came to complete the assignment affiant had made to him. Affiant says that he made, the assignment to the Tanner company and the Redwine company because he owed them together $2600, and they had for a number of years furnished him merchandise when he needed it and had been lenient with him, and he therefore made the assignment in preference of his other creditors; and that he transferred all his right, title, and interest in said exemption. Affiant says there was no agreement of any kind or nature that Tanner company and Redwine company were to buy the stock at a price around the amount of the homestead claimed by the affiant and turn it over to him. Henry Calloway bought the stock of his own initiative, and all the interest he had in said stock was in seeing that it brought a good price for the benefit of his estate, which it did.

The affidavit of C. M. Tanner, president of the Tanner Grocery Company, was introduced in evidence by the defendant and intervenors, to the effect that the assignment made to the C. M. Tanner Grocery Company and the Dougherty-Little-Redwine Company was freely made by Caswell, and that there was no fraudulent scheme or designing act of any kind or character used to influence or compel said bankrupt to execute the assignment, and that the bank-

rupt did not reserve any benefit to himself. Respondents then offered the affidavit of H. D. Carter, credit manager of Dougherty-Little-Redwine Company, to the effect that said assignment was made for the satisfaction of a pre-existing debt to his company, and that there was no fraudulent scheme, art, inducement, or reward held out to the bankrupt to induce him to make said assignment, and that the bankrupt did not reserve any interest in the assignment to himself, nor was there any benefit promised on the part of the Dougherty-Little-Redwine Company that the bankrupt shall have any benefit in said assignment, and affiant had no agreement or understanding with Caswell that this property was to be bought in at a price in order that he might reap a benefit therefrom. There was evidence that the stock of goods sold at the bankrupt sale brought an excellent price, and were bought by Henry W. Calloway for Calloway's Department Stores of LaGrange, Georgia; and it was admitted that the sale was fairly conducted.

After hearing the evidence the court passed an order continuing in force the restraining order previously granted, and confirming the prior order appointing a receiver, and ordered that the receiver take charge of the $1425 which had been set apart to the bankrupt as a homestead exemption, pending the final trial of the case in Heard superior court, after having given to Willis Smith, trustee in bankruptcy, a receipt therefor. There was also a provision in the order by which the intervenors, if they elected so to do, might withdraw the $1425 from the custody of the receiver by giving bond. Exception is taken to this judgment, on the grounds that it was error to pass the order continuing the receiver pending the final determination of the case, because the order makes a final determination of the case, and for the reason that the petition and amendment show on its face that the homestead property had been transferred to the movants and intervenors, and that they are solvent and able to respond in damages, and the appointment of a receiver to take charge of their property and hold the same was error; that the judgment was erroneous for the further reason that there was only $1425 which the intervenors could properly receive under the assignment, and yet the judgment and order complained of required the intervenors to give bond to pay the full and final judgment that petitioners might recover, and the petitioners are suing for a great deal more than the amount involved, and that

therefore said order prohibited the intervenors from giving bond, in that it would require them to become responsible for the entire amount of the petitioners' debt to obtain $1425 to which they are entitled, and places on them an additional burden in that in no view of the case are they liable for more than the amount claimed by the bankrupt as a homestead exemption. Error was also assigned on the order and judgment on the grounds that there was no question of fact involved, and it was shown by all the pleadings in the case that the right and title to the homestead property belonged to and was in the intervenors, and it was therefore an abuse of discretion to appoint a receiver to take charge of said property.

RUSSELL, C. J. (After stating the foregoing facts.)

1. C. H. Stewart and the City Supply Company, as plaintiffs, asked a judgment against Caswell, alleging that their action was based upon notes containing a waiver of homestead, and that Caswell had had set apart to him a homestead exemption of $1425 which he had assigned to the plaintiffs in error, reserving to himself an interest therein in fraud of the petitioners and for the purpose of hindering, delaying, and defrauding his creditors. The evidence, as will appear from the statement of facts, was in conflict upon this point. There was evidence sufficient to have authorized a finding that in assigning the exemption Caswell had reserved an interest to himself, and that he was, at the time of the hearing, in possession of the stock of goods which had been sold and converted into cash. On the other hand Caswell and the other defendants vigorously denied that the transfer had been induced by, or contemplated, any benefit flowing to Caswell.

The fact in issue is perhaps the most important which will be considered by the jury upon a trial, and we think the trial judge wisely continued his previous restraining order until this determining fact could be passed on by a jury. The grant and continuance of injunctions, by a well-settled rule, rests in the sound discretion of the court. Civil Code (1910), § 5497; *Kirkland* v. *Ferris*, 145 *Ga.* 93 (88 S. E. 680); *Hudson* v. *Stiles*, 146 *Ga.* 16 (90 S. E. 379); *Bullard* v. *Planters Warehouse &c. Co.*, 140 *Ga.* 325 (78 S. E. 848).

2. Exception is also taken to the fact that the judge, in passing an order allowing the intervenors to have the custody of the $1425 upon giving bond, ordered a bond in which the liability of the

intervenors would probably be greater than the amount of the fund claimed by the intervenors. The amount of the debt claimed by the plaintiffs is $1688.77. However the intervenors are estopped to question or complain of the order of the judge in this case in this respect, since, as will appear from the statement of facts, they had voluntarily offered to give bond to pay any judgment that the jury may find or the court may award in this case. Therefore, while under a strict construction of the terms of § 5502 of the Code there might be doubt as to the wording of the bond, the waiver to require a strict compliance with this section as contained in the offer of the intervenors to make a bond resolves all doubt.

3. Exception is taken to the fact that the trial judge erred in continuing the receiver. It cannot be held that the judge erred under the present record. It is a well-settled rule that this court will not consider upon review any question which was not presented to the lower court. In the answer of the intervenors, now plaintiffs in error, and the only plaintiffs in error, no reference whatever is made to the subject of a receiver, for the word "receiver" does not once appear in that answer. No other pleading in the case in the progress of the hearing presented the question as to the propriety of the receivership which existed before the intervenors were made parties in the case. The exception which was made in the bill of exceptions appears for the first time in the writ of error. If the question had been presented to the judge of the lower court, his finding might have been different. But certainly, where the question was not presented to him, it would be wrong to question the propriety of the court's judgment upon a question which was not even suggested to him.

*Judgment affirmed by operation of law.*

Beck, P. J., Atkinson and Hines, JJ. Plaintiffs as unsecured creditors of their bankrupt debtor, being without judgments or other liens, and having no claim to the property by reason of fraud in the creation of their demands or otherwise, sought to have set aside and canceled the assignment by the bankrupt to the intervening defendants of his homestead exemption which had been allowed and set aside to him by the bankrupt court, on the ground that the assignment was fraudulent and void, because there was reserved to the debtor an interest in the homestead exemption property so

assigned. Plaintiffs further prayed for an injunction restraining the trustee of the bankrupt from turning over the homestead property to the assignees, and for a receiver to take charge thereof and hold the same subject to the final judgment rendered in the case. The complaining creditors being without judgment or other liens, and having no claim to the property by reason of fraud in the creation of their demands, or otherwise, no sufficient cause was shown for an interlocutory injunction and receiver as to this property. The assignees of the homestead property are solvent and amply able to respond to any judgment which the complaining creditors may obtain against them, if they succeed·in setting aside their assignment upon the ground upon which it is attacked. It is now the well-settled general rule, that a court of equity will not interfere at the instance of complaining creditors, before judgment and .without liens, to set aside a conveyance of property alleged to have been made by a debtor for the purpose of defrauding his creditors; and under such circumstances a court of equity will not enjoin the sale of the property by the assignees or appoint a receiver to take charge thereof. *Cubbedge* v. *Adams,* 42 *Ga.* 124; *Mayer* v. *Wood,* 56 *Ga.* 427; *Stillwell* v. *Savannah Grocery Co.,* 88 *Ga.* 100 (13 S. E. 963); Civil Code (1910), § 5495; *Atlanta &c. R. Co.* v. *Carolina Portland Cement Co.,* 140 *Ga.* 650 (79 S. E. 555); *Smith* v. *Manning,* 155 *Ga.* 209 (3a) (116 S. E. 813). In *Stillwell* v. *Savannah Grocery Co.,* supra, Judge Bleckley well said: "There can be no doubt that, generally, creditors complaining of a fraudulent conveyance of his property by their debtor are not entitled to an interlocutory injunction and receiver. The present case falls within this general rule, inasmuch as there is no allegation of the insolvency of the alleged fraudulent purchasers, Stillwell, Millen & Co. The case of *Mayer* v. *Wood,* 56 *Ga.* 427, is a direct authority upon the subject, so far as an injunction is concerned; and the principle of that case fairly carried out will extend also to the element of appointing a receiver. Where injunction to restrain a solvent purchaser from disposing of the property embraced in his fraudulent purchase would not be granted, we can see no reason why a receiver should be appointed. That the solvency of the purchaser would be security against ultimate loss by the attacking creditors in case they should establish their debts and prove the fraud, would stand as well for a reason against appointing an ad interim receiver as against granting an injunction."

The position taken that the question whether the plaintiffs made a case for the appointment of a receiver or not was not passed upon by the court below, and for this reason will not be considered by this court, is utterly without merit. The hearing before the judge was one for the determination of the question whether injunction should be granted and a permanent receiver appointed, the court having appointed a temporary receiver upon an ex parte showing. The purchasers and assignees of the homestead property intervened in the case and were made parties defendant. In their answer to the petition of plaintiffs they denied the allegations upon which the rights of the plaintiffs for injunction and receiver were based. They specifically prayed that the property in question be turned over to them under their assignment thereof by their bankrupt debtor. The trial judge appointed a receiver; and in their bill of exceptions they specifically assign error on this judgment appointing a receiver, on the ground that no case under the evidence was made which would authorize the appointment of a receiver. The intervening purchasers were clearly contesting all the rights which the plaintiffs asserted; and to us it is inconceivable how it can be said that the judge did not pass upon any objections urged by them to the appointment of a receiver.

The further contention, that the purchasers are now estopped from complaining of the appointment of a receiver, on the ground that they had offered to give bond, and that in pursuance of such offer the court had granted them this privilege, is likewise untenable. Under the proper and reasonable construction of the answer of the intervening purchasers, they denied the right of the plaintiffs to the extraordinary remedy of a receiver; but prayed that, if the court found that a receivership should be granted, they be given the privilege of giving a bond to prevent such receivership. They cannot by any fair rule be held to have consented to the receivership, and to the giving of a bond to vacate the same. Having denied the right of the plaintiffs to the receivership, they will not be precluded from excepting to the judgment appointing a receiver, on the ground that they asked to be allowed to give bond if the court, over their objection, should appoint a receiver.

For the above reasons we think the trial judge erred in granting a receiver; and feel constrained to dissent from the opinion of the Justices favoring an affirmance.